NOTICE

Decision filed 12/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230646-U

NO. 5-23-0646

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 94-CF-284 |
| | ) | |
| JAMES A. JOHNSON SR., | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court erred in granting petitioner's motion for leave to file a successive postconviction petition where petitioner failed to establish cause to challenge his mandatory life sentence under the proportionate penalties clause of the Illinois Constitution.

¶ 2    The petitioner, James A. Johnson Sr., filed a motion for leave to file a successive postconviction petition. Following an evidentiary hearing, the circuit court ordered that the petitioner is entitled to a new sentencing hearing. The State appeals from the circuit court's order, arguing the petitioner failed to demonstrate cause or prejudice to file a successive petition. For the reasons that follow, we reverse and remand with directions.

1

¶ 3                          I. BACKGROUND

¶ 4     The petitioner's previous appeals set forth in great length the details of the petitioner's case. See *People v. Johnson*, 297 Ill. App. 3d 1143 (1998) (table) (unpublished order under Illinois Supreme Court Rule 23); *People v. Johnson*, 382 Ill. App. 3d 1231 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23); and *Johnson v. Bartley*, 386 Ill. App. 3d 1136 (2009) (table) (unpublished order under Illinois Supreme Court Rule 23). We recite only those facts necessary for the disposition of this appeal.

¶ 5     On April 8, 1994, the petitioner was charged by indictment with two counts of first degree murder for the deaths of Albert Greenlee and Marshelle Wooten (720 ILCS 5/9-1(a)(3) (West 1992)), one count of attempted first degree murder for the shooting of Lamont Wooten (*id.* § 8-4(a)), and one count of aggravated battery with a firearm (*id.* § 12-4.2) for events that occurred on November 9, 1993. The petitioner's date of birth is June 25, 1973, meaning at the time the crimes were committed, the petitioner was 20 years and 5 months old.

¶ 6     On May 5, 1994, the State filed a superseding information charging the petitioner with two counts of first degree murder, one count of attempted first degree murder, and one count of armed robbery (*id.* § 18-2(a)). The information did not reallege the charge of aggravated battery with a firearm. At the preliminary hearing, the trial court found probable cause for the charges in the superseding information.

¶ 7     On May 25, 1995, the petitioner was convicted by a jury of two counts of first degree murder, one count of attempted first degree murder, and one count of armed robbery. The jury unanimously found beyond a reasonable doubt that the petitioner was eligible for the death sentence under the law. However, the jury found there were mitigating factors sufficient to preclude a death sentence. The jury unanimously found beyond a reasonable doubt that the petitioner was 18 years old or older at the time of the murders for which he was convicted and

2

found the fact that the murdered persons were killed in the course of the petitioner committing another felony, *i.e.*, an armed robbery, served as a statutory aggravating factor.

¶ 8 At the sentencing hearing, the trial court sentenced the petitioner to two concurrent terms of natural-life imprisonment without the possibility of parole for the murder convictions and consecutive 10-year terms of imprisonment for the attempted-murder conviction and the armed robbery conviction. In its order, the trial court wrote: "Sentenced to mandatory life imprisonment with out [*sic*] parole on the class separate felonies. Sentenced to 10 yrs [*sic*] for each class x felonies [*sic*] to run consecutively."

¶ 9 On direct appeal, the petitioner argued that he was not found guilty beyond a reasonable doubt, that Lamont's identification of him was improperly admitted at trial, that the trial court improperly limited his cross-examination about the weapon used in the murders, that the trial court erred in allowing a witness's hearsay testimony, and that the trial court erred in refusing his tendered instructions on lesser included offenses. *Johnson*, 297 Ill. App. 3d 1143. The petitioner's convictions were affirmed on direct appeal.

¶ 10 In 1998, the petitioner filed a *pro se* petition for postconviction relief. He amended the postconviction petition three times. The last amendment, "Supplemental Amended Petition for Post Conviction Relief," was filed on January 31, 2005. On February 24, 2006, following an evidentiary hearing, the trial court denied the *pro se* postconviction petition. The petitioner appealed that denial. *Johnson*, 382 Ill. App. 3d 1231. On appeal, the petitioner alleged that trial counsel was ineffective for failing to raise a *Batson* claim on direct appeal, for failing to call a witness at the trial, and due to the attorney's personal "psychological incapacitation." The petitioner claimed, and the State conceded, that the trial court's sentence was not clear. The appellate court affirmed the trial court's dismissal of the postconviction petition. However, exercising its supervisory authority pursuant to Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1,

3

1967), this court modified the sentence to "reflect two consecutive 10-year sentences for each of his Class X felony convictions to be served concurrently with the defendant's natural-life sentence for the two first-degree murder convictions." *Johnson*, 382 Ill. App. 3d 1231, order at 12.

¶ 11    On November 6, 2007, the petitioner filed a complaint for *habeas corpus* relief, asserting he was entitled to immediate discharge from custody. The trial court summarily dismissed the complaint. The petitioner appealed, and the appellate court affirmed the dismissal. *Johnson*, 386 Ill. App. 3d 1136.

¶ 12    On April 5, 2021, the petitioner filed a motion for leave to file a successive postconviction petition. In it, the petitioner argued that his mandatory sentence of life imprisonment for his two first degree murder convictions violated the eighth amendment to the United States Constitution and the Illinois Constitution's proportionate penalties clause because the sentencing judge did not consider the petitioner's youth, other mitigating factors related to the crime, his criminal history, and his rehabilitative potential. Attached to the petition was the petitioner's affidavit about his life and a copy of his birth certificate. In his motion, the petitioner asserted that he met the cause-and-prejudice test. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. House*, 2019 IL App (1st) 110580, the petitioner argued that there was cause to not bring the claim in his initial petition where the claim "found no support in science or the law until years after his initial postconviction petition was pursued." He asserted that he was prejudiced because his sentence was imposed without consideration of his age, criminal history, role in the offense, or future rehabilitative potential.

¶ 13    On April 17, 2021, the circuit court granted the petitioner's motion for leave to file a successive postconviction petition, finding that the petitioner had alleged the requisite cause and prejudice. On July 6, 2021, the State filed a motion to dismiss the successive petition.

4

¶ 14   On March 10, 2022, the petitioner filed a report by Dr. James Garbarino, opining on the petitioner's rehabilitative potential as an "emerging adult" with an adverse childhood. On March 22, 2022, the circuit court granted in part the State's motion to dismiss the successive petition. The circuit court dismissed the petitioner's claim that his sentence violated the eighth amendment. However, the circuit court ordered that the petitioner's proportionate penalties claim proceed to an evidentiary hearing. On March 29, 2022, the State filed an answer to the successive petition.

¶ 15   On January 11, 2023, the circuit court held a hearing in this case and other cases, with Dr. Garbarino testifying as to brain development generally. The third-stage evidentiary hearing continued on March 31, 2023, and May 24, 2023. Dr. Garbarino, a developmental psychologist, testified about the report he prepared concerning the petitioner. The report was based on the petitioner's written answers to life history questions and the adverse childhood experiences (ACE) scale, and certificates the petitioner earned while in prison. Dr. Garbarino did not conduct a personal interview with the petitioner. The report was admitted into evidence, with the limitation that the trial court would not consider records concerning information subsequent to the original sentencing hearing.

¶ 16   The ACE scale assessed a person's level of adversity. The petitioner's ACE scale score put him in the top 3% of scores nationwide, reflecting a high level of adversity and putting him in a high-risk range for negative outcomes (substance abuse, depression, suicide, and violent behavior). The petitioner's answers to the ACE scale and the life history questions reflected his adverse childhood experiences.

¶ 17   Dr. Garbarino opined that the brain does not reach full maturity until approximately age 25, and brain development is delayed for individuals who experience significant adversity or trauma during childhood. Dr. Garbarino believed that the petitioner had the potential for

rehabilitation. The petitioner had some positive aspects to his upbringing. Dr. Garbarino testified that no 20-year-old has a fully developed brain regardless of their ACE score.

¶ 18 Dr. Garbarino never personally met with the petitioner. He did not review the trial transcripts. He did not focus on what the petitioner did or on the facts and circumstances of the underlying offenses, and his analysis was not affected by whether the petitioner committed the offenses. He testified that the petitioner's age as a 20-year-old and the adversity the petitioner experienced both limited the petitioner's brain development.

¶ 19 The petitioner's mother, Debra Johnson, testified about the petitioner's life growing up, including exposure to physical punishments and domestic violence, his "running with the wrong crowd," his friend being killed, and troubles in high school. The petitioner was smart and did well in school until high school.

¶ 20 On May 18, 2023, the Illinois Supreme Court issued its decision in *People v. Moore*, 2023 IL 126461. On July 14, 2023, the parties submitted written arguments following the third-stage evidentiary hearing. The State argued that the petitioner's proportionate penalties claim was foreclosed by *Moore*.

¶ 21 On August 2, 2023, the circuit court ruled on the proportionate penalties claim, finding that the petitioner was entitled to be resentenced. Although the petitioner was 20 years old at the time of the murders, the circuit court found the fact that the petitioner received a life sentence without having received the protections set forth in *Miller* violated the proportionate penalties clause because the petitioner was more like a juvenile than an adult. The circuit court reasoned that *Moore* was distinguishable because the defendant in *Moore* was sentenced to a discretionary life sentence while the petitioner here was sentenced to a mandatory life sentence. The circuit court also found that the proportionate penalties clause was violated where the sentencing court was "foreclosed from taking into consideration the youthful characteristics of an emerging adult and the potential

6

for rehabilitation." The circuit court found that a mandatory life sentence was unconstitutional as applied to the petitioner because he was unable to demonstrate his potential for rehabilitation.

¶ 22　　On August 29, 2023, the State filed a notice of appeal. This court has jurisdiction pursuant to Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 23　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 24　　On appeal, the State argues that the circuit court's order granting the petitioner a new sentencing hearing should be reversed where the petitioner failed to demonstrate cause or prejudice to file a successive postconviction petition. The petitioner counters that he demonstrated cause where neither the science regarding emerging adult brain development nor the law on which his proportionate penalties claim rests were available when he filed his initial postconviction petition. He maintains he demonstrated prejudice where being sentenced to mandatory life in prison without any consideration of his youth and attendant characteristics—including how the science of emerging adult brain operated in his case—violated due process as applied to him.

¶ 25　　The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a procedural mechanism for petitioners to raise claims of violations of their constitutional rights. *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act is a collateral attack on a final judgment and not a substitute for a direct appeal. *Id.* Although only one postconviction proceeding is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), a petitioner seeking to file a successive postconviction petition may obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). However, the bar against successive postconviction proceedings should not be relaxed unless (1) a petitioner can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23.

7

¶ 26 The filing of a successive postconviction petition is "highly disfavored" (*People v. Simms*, 2018 IL 122378, ¶ 38) and allowed only in "very limited circumstances" (*People v. Davis*, 2014 IL 115595, ¶ 14). *People v. Montanez*, 2023 IL 128740, ¶ 73. The Act provides that a petitioner's claim of substantial denial of constitutional rights not raised in his original or amended postconviction petition is waived. *Id.* ¶ 74. Thus, the procedural bar of waiver, in the context of a successive postconviction petition, is not merely a principle of judicial administration but an express requirement of the Act. *Id.* (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)).

¶ 27 Here, the petitioner contends that he demonstrated both cause and prejudice. The cause-and-prejudice test is set out in section 122-1(f) of the Act as follows:

> "Leave of court [for filing a successive postconviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

¶ 28 A motion for leave to file a successive petition seeking postconviction relief should be denied where "it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Bailey*, 2017 IL 121450, ¶ 21. It is the petitioner's burden to establish a *prima facie* showing of cause and prejudice in order to be granted leave before further proceedings on his claims can follow (*id.* ¶ 24), and both elements must be satisfied for petitioner to prevail. *People*

*v. Guerrero*, 2012 IL 112020, ¶ 15. A reviewing court considers a circuit court's assessment of cause and prejudice under the *de novo* standard of review. *People v. Clark*, 2023 IL 127273, ¶ 47.

¶ 29   The proportionate penalties clause provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Hilliard*, 2023 IL 128186, ¶ 20. "A statute violates the proportionate penalties clause if either the penalty is harsher than the penalty for a different offense containing identical elements (*People v. Sharpe*, 216 Ill. 2d 481, 521 (2005)) or 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Hilliard*, 2023 IL 128186, ¶ 20 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)).

¶ 30   The State maintains under *Moore*, the petitioner lacked cause to file a successive postconviction petition, arguing that the supreme court in *Moore* determined that the *Miller* line of cases did not give 19-year-old young adults cause to raise successive postconviction claims under the proportionate penalties clause of the Illinois Constitution, as *Miller* did not extend any additional protections to individuals over the age of 18.

¶ 31   We agree and conclude that the holding in *Moore* applies to mandatory life sentences as well as discretionary life sentences. In reaching this conclusion, we are persuaded by this court's decision in *People v. Jones*, 2025 IL App (5th) 230511-U.[1] As we noted in *Jones*, the petitioner's argument has been addressed by the First District in *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 58. *Jones*, 2025 IL App (5th) 230511-U, ¶ 38. In *Horshaw*, the appellate court noted that "previous First District cases had found that the factual distinction between mandatory and

---

[1]We may rely on the reasoning of an unpublished case as persuasive authority, as we are entitled to do under Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021) (providing that a nonprecedential order entered under Rule 23(b) after January 1, 2021, "may be cited for persuasive purposes").

discretionary life sentences was irrelevant for purposes of *Moore*'s holding as a 'life sentence [was] a life sentence whether it [was] mandatory or discretionary.' " *Id.* (quoting *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 58). The *Horshaw* court determined "it was bound by the supreme court's decision in *Moore*." *Id.* (citing *Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 60-62). "Accordingly, the [*Horshaw*] court found that the defendant could not establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition because that claim was always available to him in some form." *Id.* (citing *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63). As we concluded in *Jones*, "there was nothing in *Moore* to suggest that *Moore* had limited its holding to discretionary life sentences." *Id.* ¶ 39.

¶ 32    We find that, in light of the current law governing successive postconviction claims, the petitioner did not demonstrate cause to challenge his mandatory life sentence under the proportionate penalties clause of the Illinois Constitution and, therefore, we need not consider whether he demonstrated prejudice.

¶ 33                                III. CONCLUSION

¶ 34    For the foregoing reasons, we reverse the judgment of the circuit court granting the petitioner a resentencing hearing and remand with directions that the petitioner's successive postconviction petition be dismissed.

¶ 35    Reversed and remanded with directions.